**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Tyesha Rubin, individually and as Personal Representative of the Estate of Tyshanek W. Rubin-Spann, | ) ) ) ) ) | Civil Action:  3:18-3032-TLW |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | *(Jury Trial Requested)* |
| | ) | |
| v. | ) | |
| | ) | |
| United States of America, | | |
| Defendant. | | |

The Plaintiff, by and through her undersigned counsel, hereby brings the following claims against the Defendant United States of America through the Department of Health and Human Services, and set forth as grounds to the Complaint the following:

**THE PARTIES**

1.     The Plaintiff is a U.S. Citizen and resides in the County of Allendale in the State of South Carolina.

2.     United States of America ("United States") is the Defendant per 28 U.S.C. § 1346(b), 28 U.S.C. § 2671, et. seq., and 38 U.S.C. § 7316 as it delivers medical services through the Department of Health and Human Services and its employees at Sumter Family Health Center in the Town of Sumter, South Carolina.

3.     United States is the proper Party-Defendant in this action pursuant to the Federal Tort Claims Act ("FTCA") for a claim seeking money damages for personal injuries and resulting death of the decedent, Tyshanek W. Rubin-Spann caused by the negligent or wrongful acts and omissions of one or more federal government employees (to include Kimberly D. Ashley, MD) while acting within the scope of their federal employment. 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, et. seq. (collectively, the

1

"FTCA"). Specifically, the Plaintiff's allegations of negligence herein are against Dr. Kimberly D. Ashley and other employees of Sumter Family Health Center that are federal employees, by and through the United States Department of Health and Human Services, a "federal agency," as defined in the FTCA.

## JURISDICTION AND VENUE

4.      This action is brought against United States pursuant to the FTCA for the acts and omissions by its agents and/or employees arising out of medical services delivered to the Plaintiff decedent who was a patient at the Sumter Family Health Center. This Court has jurisdiction over the matter pursuant to the FTCA.

5.      The employees of the Sumter Family Health Center (to include and not be limited to Dr. Ashley), are employees of the government or were acting on behalf of a federal agency in an official capacity, temporarily or permanently, with or without compensation as specified in 28 U.S.C. §§ 1346 (b)(1), FTCA, and 38 U.S.C. §7365, and as such were acting within the scope of their employment.

6.      At the times of the medical treatment described herein, Plaintiff was a resident of Sumter County, South Carolina.

7.      Plaintiff timely submitted Claims for Damages (commonly referred to as a Standard Form 95) to the Department of Health and Human Services on March 21, 2018 (Exhibit A).

8.      To date the Plaintiff has received no response (admitting or denying the allegations) from the Department of Health and Human Services.

9.      Plaintiff has exhausted the administrative remedies as required under the FTCA, thereby authorizing Plaintiff to file this action, 28 U.S.C. §2675.

10.     Venue is proper in this Court under 28 U.S.C. §1346(b)(1) and 28 U.S.C. §1402 because the acts and/or omissions complained of herein occurred in whole or in part

in Sumter County, South Carolina, which are within the Columbia Division of the United States District Court for the District of South Carolina.

11.    Liability is additionally determined in accordance with the state laws in the place of occurrence (*i.e.*, the State of South Carolina), federal laws and regulations, patient's bill of rights, and other, where these acts and/or omissions occurred.  28 U.S.C. §1346; *Richards v. U.S.*, 369 U.S. 1. 11-13 (1962).

## GENERAL AND FACTUAL ALLEGATIONS

12.    Plaintiff hereby re-alleges and reaffirms the above paragraphs as if fully set forth herein.

13.    Plaintiff has complied with all conditions precedent under the FTCA including, without limitation, compliance with all pre-suit notice of claim requirements.

14.    The Plaintiff decedent, TyShanek Rubin-Spann, was a minor resident of Sumter County who received medical treatment primarily at the Sumter Family Health Center in Sumter, South Carolina. On April 11, 2016, the decedent, TyShanek Rubin Spann, (an 11-year-old female) presented to the Sumter Family Health Clinic. The Plaintiff is informed and believes that a portion of the history was taken by a nurse and a portion was taken by Dr. Kimberly Ashley.

15.    The decedent began to complain about pain in her stomach and abdomen on April 9, 2016. She had vomited a number of times and had diarrhea throughout the day and night. She also had an elevated temperature – as high as 101. The Plaintiff is informed and believes her daughter could not eat any food and was only able to drink small amounts of liquid. The decedent's pain was constant and severe. It was so severe that the decedent could not walk unless she was slumped over. Additionally, while in the waiting area the decedent was only comfortable lying on the Plaintiff's lap due to the severity of her abdominal pain. The Plaintiff specifically informed the nurse and Dr.

3

Ashley that the decedent's pain was severe, constant and unrelenting; that she had been running a fairly constant fever and that she could not keep any food down. Further, the Plaintiff told the medical staff of the decedent's recent history of diarrhea and vomiting and the fact that she had a head ache. The medical staff (including Dr. Ashley) never addressed the decedent as to how she felt. The failure to take this action was a gross deviation in the acceptable standard of medical care.

16.    Pursuant to the medical record from the Sumter Family Health Center the history is described as follows: "Here with mom for vomiting, diarrhea and fever. She started with symptoms initially 2 days ago. Vomited multiple times that night and had numerous episodes of diarrhea. Yesterday she vomited a few times and diarrhea lessened as well. Today has only vomited one time this morning and had no diarrhea. Still feels poorly, complains off and on of belly pain. Has not eaten anything today and only drank a small amount. No syncope or dizzy spells. No fever since 101 on first day of illness." According to the record the belly pain was off and on and no fever since the first day of the illness. The Plaintiff is informed and believes that there are definite discrepancies in what she told the staff and what they actually have in their record. Also, it appears that the medical staff did not illicit any information directly from the decedent. The Plaintiff is informed and believes that in cases involving these types of symptoms it is vital that information be gathered not only from the guardian/parent but also directly from the patient. Here there is no indication in the record that this took place. Therefore, the failure of the medical staff (including Dr. Ashley) to illicit information directly from the decedent about how she felt was a gross deviation from the acceptable standard of medical care. Also, if the medical staff failed to take down the correct historical information from the Plaintiff regarding the illness - then that would be another gross deviation from the acceptable standard of medical care.

4

17. According to the record Dr. Ashley completed a physical exam which consisted of an examination of the abdomen – "no tenderness, soft, normal bowel sounds and no masses." This description is consistent with an exam of the anterior or front of the abdomen. Based on these notes, the Plaintiff is informed and believes that Dr. Ashley performed an incomplete and inadequate physical examination. Based on the information included in the medical record, the decedent's painful abdomen required a more thorough physical exam to evaluate the many possibilities within the large differential diagnoses among which are peritonitis. According to the note only 2 (two) sides of the abdomen were examined. This included the chest (representing the top of the abdomen above the diaphragm) and anterior or front of the abdomen. Based on her history as indicated in the medical record, all six (6) sides of the abdomen needed to be fully examined – to rule out all potential problems to include peritonitis. The remaining four (4) sides of the abdomen that needed physical examination would have been both flanks, the back of the abdomen (the costo-vertebral angles) and the pelvic floor (a rectal exam).

18. The Plaintiff is informed and believes that Dr. Ashely should have examined the psoas muscles, an important component to assess irritation of the peritoneum of the back of the abdomen. The examination should have included leg raises to see if that elicited pain from contraction of the psoas muscles. Dr. Ashley should have touched or pressed on the decedent's back just over her lower ribs (the costo-vertral angles) to see if that elicited a painful response from irritation/inflammation of the peritoneum at the back of the abdomen. Also, the notes should have contained a statement as to whether or not the decedent was guarded or had rebound tenderness while examining the anterior or front of the abdomen which would have indicated inflammation/irritation of the peritoneum that would have required additional evaluation beyond a physical exam. The

failure to perform a proper examination was a gross deviation from the appropriate standard of medical care.

19.    A urine sample was taken which showed concentrated protein present. Further, the decedent's vital signs were B/P 100/58; Pulse 60; Respiration 28; Temperature 97.7.

20.    On April 11, 2016, Dr. Ashley's notes indicated that based on her history, examination and lab results from a urine sample – the ultimate assessment and diagnosis was a viral infection and/or stomach virus. The notes also indicate a discussion with the Plaintiff concerning the importance of pushing fluids. Also stated "will keep out of school tomorrow to allow her to recuperate."

21.    The Plaintiff is informed and believes that the entire examination took approximately 15 to 20 minutes. Additionally, the decedent could not eat anything that night and continued to experience pain in the stomach and abdomen area. The next morning the Plaintiff went to work and when she called in to check on the decedent there was no response. When the Plaintiff returned home the decedent was unresponsive and not breathing. 911 was called and the decedent was transported to the Hospital where she was pronounced dead.

22.    The Plaintiff is informed and believes that the ultimate findings on autopsy stated (as to probable cause and mechanism of death): sepsis for hours; peritonitis for hours and appendicitis for days. In the GI tract the autopsy notes states that there is generalized peritonitis and with a blackened gangrenous appendicitis. The case summary states likely acute peritonitis secondary to acute appendicitis which appeared gangrenous and ruptured, pulmonary congestion edema.

23.    As a direct result of the incidents in question, the Plaintiff is informed and believes it was not possible to have a normal comprehensive abdominal physical

examination on April 11, 2016 and that an abdominal exam limited to the front of the abdomen could have appeared to be normal. Therefore, the Plaintiff is informed and believes that if a proper physical examination of all sides of the abdomen had been completed it would have shown and/or indicated symptoms consistent with an acute abdomen representing peritoneal inflammation/irritation e.g. peritonitis/appendicitis. At that point the doctor would have likely recommended transfer to the nearest Hospital for appropriate evaluation and treatment. Based on the decedent's vital signs in the physician's office, the Plaintiff is informed and believes that with proper referral, care and treatment on April 11, 2016 the decedent would have survived.

24. All actions or omissions by doctors, nurses, technicians, agents, employees, staff, agents or ostensible agents of Defendant who attended to Plaintiff were performed in the scope of their employment.

25. The expert opinions of Marc Tanenbaum, MD is that the one or more breaches of care by the Defendant occurred in the medical treatment provided to the Plaintiff as stated above. Dr. Tanenbaum's expert opinion is attached hereto and incorporated herein by reference (Exhibit B).

26. It is more likely than not that the above actions and/or inactions of the Defendants directly caused the decedent to needlessly suffer, both physically and mentally, and ultimately die. Additionally, had the decedent been appropriately examined she would not have died.

## NEGLIGENCE CLAIM

27. Plaintiff hereby re-alleges and affirms the above paragraphs as if fully set forth herein.

28. Defendant through the Sumter Family Health Center, its subsidiary and its employees, owed Plaintiff a duty to provide that standard of care, skill, and treatment which

7

in light of all relevant surrounding circumstances is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

29.    Defendant through the Sumter Family Health Center, breached this duty and deviated from the acceptable standard of care by rendering care and treatment that was below the standard of care including, without limitation, by failing to provide appropriate care, failing to provide proper and adequate medical attention, failing to send Plaintiff decedent for further testing, failing to perform appropriate diagnostic tests in a timely manner, failing to exercise reasonable care for the well-being of the Plaintiff decedent under the circumstances, failing to provide health care to the Plaintiff decedent that met the minimum standard of care in the relevant medical community, failing to follow generally accepted medical and diagnostic standards, practices, and procedures, failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances, and in failing such particulars as may be discovered in the course of this litigation.

30.    As a direct and proximate result of the aforesaid breaches of the standard of care, the Plaintiff decedent endured severe and grievous pain, suffering (both mentally and physically), prior to her death; Plaintiff has incurred medical bills and expenses, funeral bills and expenses, mental anguish, emotional distress, anxiety, and is expected to incur future pain and suffering.

31.    United States is vicariously liable for the deviations from the standard of care and negligence of the Sumter Family Health Center, Dr. Ashley, and all of its employees and agents by and through the Department of Health and Human Services, a federal agency.

## WRONGFUL DEATH CLAIM

32.    Plaintiff hereby re-alleges and affirms the above paragraphs as if fully set

forth herein.

33.     This action is brought for the wrongful death of Tyshanek W. Rubin-Spann, pursuant to the provisions of § 15-51-10 *et seq.*, <u>Code of Laws of South Carolina</u> (1976, as amended), and is brought for the statutory heir(s) of Tyshanek W. Rubin-Spann, who died on the 12th day of April, 2016.

34.     The death of the Decedent was caused and occasioned by the negligent and grossly negligent acts on behalf of the Defendant as set forth above.

35.     Prior to her death, Tyshanek W. Rubin-Spann was 11 years of age. By reason of her untimely death, her heir(s) has been deprived of all the benefits of her society and companionship and have been caused great mental shock and suffering by reason of her death. They have and will forever be caused grief and sorrow by the loss of Ms. Rubin-Spann's love, society, and companionship. They have been deprived of her future experiences and judgments. They have incurred expenses for her funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

    (a)    mental shock and suffering;
    (b)    wounded feelings;
    (c)    grief and sorrow;
    (d)    loss of his support;
    (e)    loss of companionship; and
    (f)    deprivation of the use and comfort of the Decedent's society and loss of his experience, knowledge, and judgment

36.     As a direct and proximate result of the aforesaid breaches of the standard of care, the Plaintiff decedent endured severe and grievous pain, suffering (both mentally and physically), prior to her death; Plaintiff has incurred medical bills and expenses, funeral bills and expenses, mental anguish, emotional distress, anxiety, and is expected to incur future pain and suffering.

37.     United States is vicariously liable for the deviations from the standard of care and negligence of the Sumter Family Health Center, Dr. Ashley, and all of its

employees and agents by and through the Department of Health and Human Services, a federal agency.

WHEREFORE, Plaintiff demands judgment against the Defendant for such amount of actual and consequential damages as the Court may find, plus costs and disbursements of this action, and any other such relief this Court deems just and proper.

## CERTIFICATE OF COUNSEL

Undersigned counsel certifies that a reasonable investigation gave rise to a good faith belief that grounds exist for an action against the Defendant named herein.


    s/C. Carter Elliott, Jr.
C. Carter Elliott, Jr., Esq.
Elliott & Phelan, LLC
117 ½ - 119 ½ Screven Street
P.O. Box 1405
Georgetown, SC  29442
(843) 546-0650
(843) 546-1920 (fax)
carter@elliottphelanlaw.com


ATTORNEY FOR PLAINTIFF

November 8, 2018
Georgetown, South Carolina