UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| Tyesha Rubin, individually and as Personal Representative of the Estate of Tyshanek W. Rubin-Spann, <br><br> Plaintiff, <br><br> vs. <br><br> United States of America, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.: 3:18-cv-03032-TLW <br><br><br> PLAINTIFF'S RULE 26(a)(2)(B) DISCLOSURES – EXPERT REPORT OF MARC A. TANENBAUM, MD |
|---|---|---|

I, Marc A. Tanenbaum, MD, being duly sworn deposes and says:

- I am a physician licensed to practice in the States of Georgia, as well as the appropriate regulatory agency, having jurisdiction over the practice of my profession in the locations in which I practice.
- I am Board Certified by the American Board of Pediatrics, a national association which administers written and/or oral examinations for certification in the area of practice and specialty about which this opinion on the standard of care is offered.
- I have actual professional knowledge and experience in the specialty and area of practice in which this opinion is given, as a result of my having been regularly engaged in the active practice in the area of specialty and practice for at least three (3) of the last five (5) years immediately preceding this opinion (see attached CV).
- The evidence made available to me, for my review, prior to the making of this affidavit includes:
    - Affidavit of Tyesha Rubin
    - Sumter Family Health records [bate stamped 001-007]
    - Palmetto Health Tuomey records [bate stamped 008-034]
    - Newberry Pathology records [bate stamped 035-053]
    - Deposition of Kimberly Ashley, MD with exhibits

    Additionally, it is my understanding that discovery is ongoing and that I can expect to receive further information including depositions, medical records and/or reports. Therefore, upon receipt and review of this information, my opinions may be further supplemented, altered and/or changed.
- Through my professional standing as set forth above and in my attached CV, I am familiar with the applicable standard of care for medical personnel working and providing medical treatment in a pediatric health facility. This would also be that standard of care specifically applicable to the conduct of employees working for the Sumter Family Health Center caring for pediatric patients. The standard of care requires:

- Upon assuming clinical responsibility for the care of a new patient, the medical staff must, in a timely fashion, conduct a medical evaluation, including but not limited to comprehensive history from those present (including verbal older children and adolescents and young adults), physical examination, and diagnostic testing appropriate to the patient's stated past medical history and current clinical status.
- It is the medical staffs' responsibility to comply with and enforce all national, state, and local medical directives, policies, and procedures that are relevant to a given set of clinical circumstances.
- The medical staff (including physicians) must, in a timely fashion, formulate a diagnostic and therapeutic intervention plan based upon the diagnostic impression and differential diagnosis outlined hereinabove. Said intervention plan should take into consideration all reasonable interventions and, in a timely fashion, implement those necessary to alleviate suffering and avert clinical deterioration.
- The medical staff must ensure that any patient with an emergent medical condition is seen in a timely fashion by the responsible physician so that the patient can be properly evaluated as detailed hereinabove. This would include and not be limited to addressing any lab work and/or symptoms. If the patient is detected to have problems outside the facilities capabilities to handle, that patient should immediately be sent to the nearest hospital or higher care facility for proper care and treatment.
- A facility must have properly qualified and trained correctional staff available – who can recognize and identify a serious medical condition so that they can ensure the patient receives emergent medical care.
- A facility must make sure its patients are seen and evaluated by a qualified physician professional.
- A medical clinic staff must consider all treatment options and implement those – always taking into consideration the health and safety of the patient. All reasonable and necessary treatment must be carried out as soon as possible so that the patient does not unduly suffer and so that his condition does not deteriorate.
- Should it be determined that the level of care needed by the patient rises above the level the medical staff is capable of handling, that patient should immediately be transferred to the nearest higher care facility.
- I have reviewed the evidence submitted to me, and based upon my expertise, as set forth above, it is my opinion, to a reasonable degree of medical certainty, the medical staff of the Sumter Family Health Center, to include Dr. Ashley, committed the following negligent, grossly negligent and/or reckless acts and/or omissions, which constitutes a gross failure to comply with the appropriate standards of medical care:
- On April 11, 2016, TyShanek Rubin Spann, (an 11 year old female) presented to the Sumter Family Health Clinic. According to the child's mother (Tyesha Rubin) a portion of the history was taken by a nurse and a portion was taken by the physician (Dr. Kimberly Ashley).
- Pursuant to the affidavit of the mother TyShanek began to complain about pain in her stomach and abdomen on April 9, 2016. She had vomited a number of times and had diarrhea throughout the day and night. She also had an elevated temperature – as high as 101. According to the mother her daughter could not eat any food and was only able to

drink small amounts of liquid. The mother described the pain as constant and severe. It was so severe that her child could not walk unless she was slumped over. Additionally, while in the waiting area TyShanek was only comfortable lying on her mother's lap due to the severity of her abdominal pain. According to the affidavit of the mother she specifically informed the nurse and Dr. Ashley that her daughter's pain was severe, constant and unrelenting; that she had been running a fairly constant fever and that she could not keep any food down. The mother further states that she told the medical staff of her daughter's recent history of diarrhea and vomiting and the fact that she had a head ache. It is my understanding that this history was relayed by the mother because the medical staff (including Dr. Ashley) never addressed TyShanek as to how she felt.

- Pursuant to the medical record from the Sumter Family Health Center the history is described as follows: "Here with mom for vomiting, diarrhea and fever. She started with symptoms initially 2 days ago. Vomited multiple times that night and had numerous episodes of diarrhea. Yesterday she vomited a few times and diarrhea lessened as well. Today has only vomited one time this morning and had no diarrhea. Still feels poorly, complains off and on of belly pain. Has not eaten anything today and only drank a small amount. No syncope or dizzy spells. No fever since 101 on first day of illness." According to the record the belly pain was off and on and no fever since the first day of the illness. It seems that there are definite discrepancies in what the Mother remembered telling the staff and what they actually have in their record. Also it appears that the medical staff did not illicit any information directly from the minor child. In cases involving these types of symptoms it is vital that information be gathered not only from the guardian/parent but also directly from the patient. Here there is no indication in the record that this took place. Therefore, the failure of the medical staff (including Dr. Ashley) to illicit information directly from the minor child about how she felt is a gross deviation from the acceptable standard of medical care. Also, if the medical staff failed to take down the correct historical information from the mother regarding the illness - then that would be another deviation from the acceptable standard of medical care.

- According the record the physician completed a physical exam which consisted of an examination of the abdomen – "no tenderness, soft, normal bowel sounds and no masses." This description is consistent with an exam of the anterior or front of the abdomen. Based on these notes, it is my opinion that Dr. Ashley performed an incomplete and inadequate physical examination. Based on the information included in the medical record, the patient's painful abdomen required a more thorough physical exam to evaluate the many possibilities within the large differential diagnoses among which are peritonitis. According to the note only 2 (two) sides of the abdomen were examined. This included the chest (representing the top of the abdomen above the diaphragm) and anterior or front of the abdomen. Based on her history as indicated in the medical record, all six (6) sides of the abdomen needed to be fully examined – to rule out all potential problems to include peritonitis. The remaining four (4) sides of the abdomen that needed physical examination would have been both flanks, the back of the abdomen (the costo-vertebral angles) and the pelvic floor (a rectal exam).

- In addition, Dr. Ashely should have examined the psoas muscles, an important component to assess irritation of the peritoneum of the back of the abdomen. The examination should have included leg raises to see if that elicited pain from contraction of the psoas muscles. Dr. Ashley should have touched or pressed on the minor's back just over her lower ribs (the costo-vertral angles) to see if that elicited a painful response from

irritation/inflammation of the peritoneum at the back of the abdomen. Also, the notes should have contained a statement as to whether or not the patient was guarded or had rebound tenderness while examining the anterior or front of the abdomen which would have indicated inflammation/irritation of the peritoneum that would have required additional evaluation beyond a physical exam. The failure to perform a proper examination was a deviation from the appropriate standard of medical care.

- A urine sample was taken which showed concentrated protein present. Further, the patient's vital signs were B/P 100/58; Pulse 60; Respiration 28; Temperature 97.7.
- On April 11, 2016, Dr. Ashley's notes indicated that based on her history, examination and lab results from a urine sample – the ultimate assessment and diagnosis was a viral infection and/or stomach virus. The notes also indicate a discussion with Mom concerning the importance of pushing fluids. Also stated "will keep out of school tomorrow to allow her to recuperate."
- According to the Mother's affidavit, the entire examination took approximately 15 to 20 minutes. Additionally, according to the Mother's affidavit, her daughter could not eat anything that night and continued to experience pain in the stomach and abdomen area. The next morning the mother went to work and when she called in to check on her daughter there was no response. When she returned home TyShanek was unresponsive and not breathing. 911 was called and she was transported to the Hospital where she was pronounced dead.
- The ultimate findings on autopsy stated (as to probable cause and mechanism of death): sepsis for hours; peritonitis for hours and appendicitis for days. In the GI tract the autopsy notes states that there is generalized peritonitis and with a blackened gangrenous appendicitis. The case summary states likely acute peritonitis secondary to acute appendicitis which appeared gangrenous and ruptured, pulmonary congestion edema.
- Based on the autopsy findings I do not believe it was possible to have a normal comprehensive abdominal physical examination on April 11, 2016. However, I do feel that an abdominal exam limited to the front of the abdomen could have appeared to be normal. Therefore, it is my further opinion that if a proper physical examination of all sides of the abdomen had been completed it would have shown and/or indicated symptoms consistent with an acute abdomen representing peritoneal inflammation/irritation e.g. peritonitis/appendicitis. At that point the doctor would have recommended transfer to the nearest Hospital for appropriate evaluation and treatment. Based on her vital signs in the physician's office I believe with proper referral, care and treatment on April 11, 2016 this patient would have survived.
- The above violations of the standard of care proximately caused injuries and damages to the Plaintiff which may be surmised as follows:
  - It is more likely than not that the above actions and/or inactions of the Defendants (to include Dr. Ashley) caused Ms. Rubin-Spann to needlessly suffer, both physically and mentally, and then later pass away.
  - All opinions expressed in this affidavit have been given to a reasonable degree of medical certainty.

Marc A. Tanenbaum, MD

July 19, 2019

Marc A. Tanenbaum, M.D.
# 202
6300 Powers Ferry Road, Suite 600
Atlanta, GA 30339
404-654-0426

| | |
|---|---|
| 9/2009-present | Priority Pediatrics, PC<br>#202<br>6300 Powers Ferry Road<br>Suite 600<br>Atlanta, GA 30339<br>404-654-0426 |
| 11/2013-03/2014 | Kennesaw Pediatrics, PC<br>Locum Tenens Pediatrician<br>3745 Cherokee Street, Ste 401<br>Kennesaw, GA 30144 |
| 5/2010-9/2016 | Richard G Wagner Jr MD<br>Locum Tenens Pediatrician<br>6000 Lake Forrest Dr NW Suite 110<br>Sandy Springs, GA 30328 |
| 6/2010-present | Primary Care Pediatrics<br>Locum Tenens Pediatrician<br>763 Peachtree Parkway Suite2<br>Cumming, GA 30041 |
| 9/2013-present | The World of Pediatrics<br>Locum Tenens Pediatrician<br>3005 Royal Blvd S., STE 110<br>Alpharetta, GA 30022 |
| 8/2009-06/2011 | Children's HealthCare of Atlanta Immediate Care<br>Part-time Associate Pediatrician<br>2660 Satellite Blvd.<br>Duluth, GA 30096 |
| 8/2009- 12/2011 | KidsTime Pediatrics<br>Associate Pediatrician<br>5252 Roswell Road NE<br>Suite 200<br>Atlanta, GA 30328 |
| 7/1978-4/2009 | Pediatrics & Adolescent Medicine, P.A. |

|  |  |
|---|---|
|  | Primary Care Pediatrician<br>755 Mount Vernon Highway<br>Atlanta, Georgia  30328 |
| 7/1977-6/1978 | Children's Hospital Medical Center<br>Chief Resident in Pediatrics<br>Ambulatory Services<br>Boston, Massachusetts |
| 7/1976-6/1977 | Carney Hospital<br>Affiliate Pediatric Staff<br>Boston, Massachusetts |
| 7/1976-6/1978 | Harvard Medical School<br>Clinical Fellow in Pediatrics<br>Ambulatory Chief Resident<br>Boston, Massachusetts |
| 7/1975-6/1976 | Boston City Hospital<br>Senior Resident in Pediatrics, PL-3<br>Boston, Massachusetts |
| 7/1974-6/1975 | Children's Hospital of Philadelphia<br>Pediatric Resident, PL-2<br>Philadelphia, PA |
| 7/1973-6/1974 | Children's Hospital of Philadelphia<br>Pediatric Intern, PL-1<br>Philadelphia, PA |
| 7/1969-6/1973 | University of Pennsylvania School of Medicine<br>Philadelphia, PA |
| 7/1965-6/1969 | Duke University, B. S.<br>Durham, North Carolina |

**Memberships**

| | |
|---|---|
| 1990-present | Cobb Pediatric Society |
| 1978-present | American Medical Association |

| | |
|---|---|
| 1978-present | Medical Association of Georgia |
| 1978-present | Greater Atlanta Pediatric Society |
| 1990-1999 | Orton Dyslexic Society |
| 1982-1989 | State Board Member, Learning Disabilities Association of Georgia |

## Certification

| | |
|---|---|
| 5/22/1987 | Board of Pediatrics, recertification without expiration |
| 9/10/1978 | Board of Pediatrics |

## Licensure

| | |
|---|---|
| 1978 | Georgia, #19429- Active |
| 1975 | Massachusetts, #39215- Inactive |
| 1974 | Pennsylvania, #15759-E- Inactive |

## Research

I have been a sub-investigator in well over 100 studies since 1990 involving such areas as antibiotics, vaccines, ADHD, antihistamines and anti-asthma medications.

### Hospital Affiliation

Active Staff:
  Northside Hospital, Atlanta

Active Associate Staff:
  Children's Healthcare of Atlanta @ Egleston

Children's Healthcare of Atlanta @ Scottish Rite

Affiliate Staff:
03/2013-present     Atlanta Medical Center, Atlanta, GA
2012-2/2014         North Fulton Medical Center, Roswell, GA
11/2016-present     Emory University Hospital Midtown

Revised 12/29/2016

# EXPERT INFORMATION SUMMARY SHEET

NAME: Marc A. Tanenbaum, MD, FAAP

TAX ID #: 27-0998287

DATE OF BIRTH: 08/28/1947

**ADDRESS FOR CORRESPONDENCE:**

6300 Powers Ferry Road

Suite 600, #202

Atlanta, GA 30339

**PHONE CONTACT NUMBERS:**

WORK**:** 404-654-0426

FAX: 678-806-0900

HOME: Unlisted

E-MAIL: doctor.t@yahoo.com

CELL: SPECIAL INSTRUCTIONS

**BEST TIME TO REACH BY PHONE:** Weekdays after 5 PM

CELL PHONE NUMBER: 770-853-1497

**I HAVE A SPECIAL INTEREST IN THE FOLLOWING AREAS OF MEDICINE**: general pediatrics and adolescent medicine

**I AM BOARD CERTIFIED IN THE FOLLOWING AREAS OF MEDICINE**: Pediatrics

**MY HOURLY CHARGE IS:** $450/hour

**REVIEW AND REPORTING:** $450 /hour

**Report Retainer**: Due and payable in advance of submission of any preliminary or final written report: $2,000.00. If this work is canceled, the unexpended portion of this retainer shall be refundable.

**DEPOSITION**: For time spent preparing the case, document review, research, analysis, telephone calls, report preparation, trial preparation and travel time; and any other such time related to the subject case, beyond the scope of an initial telephone interview of the consultant may be considered billable time: $450 per hour.

**COURT CHARGE**: For time spent testifying, awaiting testimony, assisting in the testimony of others, reading and reviewing and correcting transcripts, and for time to and from the testimony location: $450 per hour.

Out-of-state testimony will be charged at a one-day (10-hour) minimum, which will

# EXPERT INFORMATION SUMMARY SHEET

include travel time: $4,500.00 plus. Deposition testimony and assistance during the testimony of others will be charged at a 5-hour minimum, which may include travel time: $2,500.00 plus. All local travel will be billed portal-to-portal.

**CANCELLATION POLICY**: If scheduled deposition testimony or scheduled courtroom testimony is canceled with less than two business day's notice, a minimum billing of two hours shall result and the unexpended portion of this retainer shall be refundable to payee.

Cancellation of the same with less than one business day's notice shall result in a minimum of four hours of billing time and shall be applied to the retainer in a similar fashion as above. Same day cancellation shall result in a full-day fee of $4,250.00.

Retainer payments for testimony at depositions will not be accepted from opposing attorneys. If a

request for fee reduction is made due to a protective order, Retaining attorney and Law Firm are responsible for the full retainer fee.

**INFORMATION PERTAINING TO EXPERT REVIEW AND TESTIMONY HISTORY**:

**LITIGATION, EXPERT REVIEW AND TESTIFYING HISTORY** (See Below).

**DEPOSITION & TRIAL TESTIMONY LIST:**

**CASE NAME & LOCATION, DATE, DEPOSITION, TRIAL ATTORNEY**

1) ? Name (Pott's Puffy Tumor), Cobb County, GA ?; ~2001 [MM,FD Defense Atty: ?] TRIAL

2) **Carpio** v Marc Tanenbaum, Fulton County, GA, #01-VS-026293-C 2006 [MM,FD Defense: John E. Hall, Jr., GA Bar # 319090]

DEPOSITION; This case is now resolved. I was dropped from the case and it is no longer active.

3) **Javis Jones v Tito Sobrinho**, MD, Richmond County, GA, #2006RCCV-761 10/23/2007 [MM,FD Plaintiff: Stephen R. Chance, Robert D. Roll] DEPOSITION.

4) About 20-25 years ago I was deposed and went to TRIAL as a defendant in a medical liability suit regarding failure to obtain informed consent of biologic parents from a child who was in the care of proposed adoptive parents in the newborn nursery for an IVP procedure. This procedure resulted in minor extravasation of dye into the tissues of the hand, leaving a minor scar, slightly visible 5 years later at trial., The verdict was rendered in my favor. The case was in Metro Atlanta, either Fulton or Cobb County, but I do not remember the specifics.

# EXPERT INFORMATION SUMMARY SHEET

5) **Whitehead** v. Pitt Memorial Hospital, et al;10 CVS 487, Civil Superior Court Division; Onslow County, Jacksonville, North Carolina; June 08, 2012; DEPOSITION: Plaintiff Attorney: Butler Daniel & Associates, 1133 Military Cutoff, Suite 200, Wilmington, N.C. 28405,

Tel: (910)679-4360; alleged failure to diagnose Congenital Heart Disease.

6) **James Pouncey** vs Plantation General Hospital Limited Partnership, LLC; **Pouncey v. Dubrovskiy**, D.O., et al Case No: CACE-17-010922; April 10, 2018 DEPOSITION: Plaintiff Attorney: Christopher Russomanno, of Russomanno & Borrello, P.A., 150 West Flagler Street, PH 2800, Miami, Florida 33130 , Tel: 305-373-2101; alleged failure to follow up on abnormal lab (HbA1c)

7) **Gadbois** MAY 07, 2018 DEPOSITION: Plaintiff Attorney: Harry Shevin, of Shevin Law Firm, 7777 Glades Road, Suite 212, Boca Raton, FL 33434, Tel: 561-409-0138; alleged failure to perform complete neck range of motion neck exam delaying diagnosis of Torticollis in infancy with timely referral to PT thereby avoiding neck surgery.

8) **Taylor Whitehead**; June 17th, 2012; DEPOSITION: Plaintiff Attorney: Butler Daniel; Alleged Failure to Diagnose Congenital Heart Disease

9) **Dayauna Nicole Kent**; May 1, 2013; DEPOSITION: Plaintiff Attorney: Carey Bauer, Gilreath & Associates; Alleged failure to Dx Intussusception.


**DEPOSITION & TRIAL SUMMARY**: GA (7) TOTAL (7); Plaintiff (3) Defense (4)

TO THE BEST OF MY KNOWLEDGE, ALL INFORMATION IS ACCURATE;

HOWEVER, THE LIST MAY NOT BE NOT COMPLETELY INCLUSIVE, AS IT WAS NOT COMPILED UNTIL 5/08/18 and since added to.

I HAVE YOU BEEN CONSULTED BY THE PLAINTIFF: ~13;  THE DEFENSE: ~6 IN CASES IN WHICH I WAS CONSULTED BY THE PLAINTIFF, I FOUND LIABILITY ABOUT 65% OF THE TIME.

IN CASES IN WHICH I WAS  CONSULTED BY THE DEFENSE, I FOUND NO LIABILITY ABOUT 90% OF THE TIME.

I ADVERTISE AS A MEDICAL CONSULTANT OR EXPERT WITNESS IN THE SEAK EXPERT DIRECTORY.

I HAVE GIVEN DEPOSITIONS ABOUT 10 TIMES FOR PLAINTIFF & 3 FOR DEFENSE?


I HAVE TESTIFIED AT TRIAL TWICE FOR THE DEFENSE_ ONCE (SEE CASE #1 ABOVE & & CASE #2 AS A WITNESS TO FACT IN COBB COUNTY, GA.

**MY MALPRACTICE INSURANCE CARRIER HISTORY**:

Medical Mutual of N.C. in past; and Medical Association of Georgia; currently Applied Medico-Legal Solutions Risk Retention Group, Inc., an Arizona corporation.

**EXPERT INFORMATION SUMMARY SHEET**

IF SUBSTANDARD CARE IS FOUND, I WILL BE AVAILABLE FOR DEPOSITION AND TESTIMONY.

**SPECIAL REQUESTS OR CONCERNS:** A completed and returned contract will be necessary prior to rendering services, specifying the following items:

**General Scope of Services**: Services may include, but are not limited to, the following: review of all related documents; telephone consultations; meetings; research; preparation of written draft preliminary and final reports; assistance in formulating discovery inquiries; preparation of exhibits and demonstrative evidence; travel; testimony at trial, arbitrations, mediations and depositions; assistance during the testimony of others.

Counsel warrants that he/she has been asked and is expected to furnish all relevant records, documents, and materials as discovery rules permit. Counsel agrees that Dr. Tanenbaum is initially retained only as a Consulting Expert on the subject case. Accepting the role of Testifying expert will depend on Dr. Tanenbaum's determination of the merits of the case, and the desire of Retaining Counsel to use Dr. Tanenbaum as an Expert Witness for deposition and/or trial. Retaining Counsel agrees that the designation of Expert Witness will be mutually agreeable and made in writing to Dr. Tanenbaum by Counsel. Retaining Counsel further warrants that Dr. Tanenbaum is performing no work for the subject case, but is solely contracted by Counsel, who warrants that fees for work performed are not linked to the outcome of the subject case. Retaining Counsel agrees to inform Dr. Tanenbaum of motions in Limine and motions to exclude Dr. Tanenbaum as an Expert.

**Out of State Expert Credentialing: For out-of-state testimony,** Retaining Counsel shall ensure in advance and warrants that any licensing problems or credentialing conflicts about Expert Testimony in that State by Dr. Tanenbaum have been satisfactorily resolved with all parties, including the local State Board of Medicine. Retaining Counsel understands that my Forensic work on the subject case is not the practice of medicine.

**Vacation Schedules**: Vacation/Holiday schedules known to all parties will be shared sufficiently in advance to permit continuance or rescheduling if necessary.

**Scheduled Air Travel**: Scheduled air time over one hour (1 hour) one way shall be First Class. If First class is not available, such travel shall be Business class.

**Compensation for time**: Compensation to Dr. Tanenbaum shall be as follows: Preparatory work: For time spent preparing the case, document review, research, analysis, telephone calls, report preparation, trial preparation and travel time; and any other such time related to the subject case, beyond the scope of an initial telephone interview of the consultant may be considered billable time: $450 per hour.

**Amendment of Work**: Counsel agrees that Dr. Tanenbaum reserves the right to amend report as required should new information become available that would necessitate an updated analysis and opinion.

# EXPERT INFORMATION SUMMARY SHEET

**Testimony Retainer and Cancellations**: Due and payable prior to preparation by retaining Counsel in advance of testimony at deposition or at trial, in Atlanta: $2,500.00; within Georgia, outside of Metropolitan Atlanta: $3,000.00; out of state: $4,500.00.

**Initial Retainer**: A minimum fee/retainer in the amount of $2,000.00 is due and payable upon execution of this document. This retainer is non-refundable and replenishable when used up, until the Agreement is terminated or resolution of the subject case occurs as described below; and is required prior to the initiation or continuation of any case work. Upon Termination, as defined below, the unexpended part of the replenished retainer fee shall be refundable to payee with all accumulated records, or after written instructions as to the destruction of said records.

**Report Retainer**: Due and payable in advance of submission of any preliminary or final written report: $2,000.00. If this work is canceled, the unexpended portion of this retainer shall be refundable.

**Travel Retainer**: A Travel Retainer Fee of $2,000.00 will be required at least three business days in advance of travel outside of Metropolitan Atlanta. Any unexpended part of this retainer will be applied to current billings or returned to Retaining Counsel.

I HAVE BEEN INVOLVED IN LITIGATION DIRECTLY AS A DEFENDANT IN A MEDICAL MALPRACTICE SUIT TWICE? Once about 20-25 years ago resolved in my favor; and once 2006, in which I was dropped from the case without prejudice in 2009.

I PREFER REVIEWING CASES FOR BOTH DEFENSE & PLAINTIFF.

Updated as of 07/16/2019

Marc A. Tanenbaum, MD